McKinley L. Phillips, S.
This is a motion brought on behalf of “Candy Crawford”, an infant, (1) to ratify and confirm a certain notice of election under EPTL 5-3.2, filed March 3, 1969 by Virginia Dolan, as mother and natural guardian of said infant, which claims the right of said infant to participate in the estate of the testator, Clyne Crawford, as a child born after the execution of the will, and (2) to obtain an order of this court directing Winifred S. Crawford as executrix to pay over such share of the estate as said infant may be entitled to by reason of the election against said estate.
The infant, Candy Dolan, was born out of wedlock to Virginia Dolan on April 1,1955. On or about September 8,1958, Virginia Dolan filed a filiation proceeding with the then Children’s Court of this county against the decedent, Clyne Crawford, to establish the paternity of said infant, and thereafter a filiation order was entered on November 18, 1958, declaring the said decedent to be the father of said infant, and providing for support for said infant in the amount of $40 per week, until the said child should arrive at the age of 16 years, or should sooner die or be legally adopted.
On or about January 16, 1967 proceedings were brought in Family Court by the mother of said infant against decedent for increased support and the furnishing of additional security for the payment thereof until such infant should reach the age of 21 years. A motion was made on behalf of decedent to dismiss said proceedings and for modification of the 1958 order on the grounds that the proceeding in 1958 constituted a compromise agreement which acted as a final settlement of the matter which could not be changed in the absence of fraud. The court held however on May 5, 1967 that the decree of November 18, 1958 constituted an order of filiation and support, and had been thereafter considered as such by the parties and their attorneys, and that the decedent’s motion should be denied, and a hearing held on the application.
Thereafter a hearing was held and the evidence and proof offered by the parties was received. On November 22, 1967 the court handed down a decision (1) increasing support payments for said child to $100 per week, (2) providing that such payments should continue until the child reached the age of 21 years, or “ otherwise becomes financially independent,” (3) providing for the continuance of the security then on file, and (4) making no provision for additional security for the payment of *760 the additional support payments allowed on the ground that the court could find no statutory authority to do so.
On November 27, 1967 an order was entered on said decision. However, upon stipulation made in open court, the order provided for the payment of $75 per week instead of $100' per week, and for the filing of security for the payment thereof.
On January 8,1968 the Liberty National Bank and Trust Company of Dunkirk, New York, executed a declaration of trust, dated January 2, 1968, supplementing a declaration of trust dated June 26, 1961; all in conformity with the support orders of the court.
On September 28, 1968 the decedent died leaving a will executed February 9, 1966, which has been .admitted to probate in this court. The decedent left no children surviving him except said infant.
The claim of the infant that she has a right to share in decedent’s estate is found in her contention that within the meaning of the statute she is an after-born child of the decedent.
Subdivision (a) of EPTL 5-3.2 reads in part as follows: ‘ ‘ Whenever a testator, during his lifetime or after his death, has a child born after the execution of a last will, and dies leaving the after-born child unprovided for by any settlement * * * such child shall succeed to a portion of the testator’s estate as herein provided ’ ’.
EPTL 4-1.2 (subd. [a], par. [2]) grants the right of an illegitimate child to inherit from his father upon condition that an ‘ ‘ order of filiation declaring paternity ’ ’ was made “in a proceeding instituted * * * within two years from the birth of the child.”
In view of the fact that the infant was born on April 1, 1955 and the filiation order was made November 18, 1958, it would appear on the face of it that she fails to qualify as a person entitled to be included in either of the above statutes. However, the infant, raises certain questions of law which require consideration. These are:
“ 1. That the decedent, by his conduct during the infant’s conception period and during the first two years and three months of her life, is estopped to deny the paternity of the infant.
“2. As applied to this particular infant and as to all other infants in a similar situation, the provisions of Section 4-1.2(2) E.P.T.L., creates an arbitrary classification and is without basis or reason when it permits illegitimate children to inherit from their fathers, where the petition was brought within two years of their birth, but excludes those illegitimate children who had *761 paternity orders entered in their behalf by reasons of the exceptions contained in Section 517, F.C.A. Such classification is unconstitutional in that it deprives this infant of substantial rights and property and equal protection of the law and is in violation of the 14th Amendment of the Federal Constitution in [sic} Article 1, Sec. 11 of the New York State Constitution.”
It has long been recognized that the rights given after-born children are of statutory creation and that historically such rights were intended to prevent ‘ ‘ inadvertent or unintentional disinheritance ” of a child. (Matter of Harris, 47 Misc 2d 836, 837-838.) EPTL 5-3.2, and its predecessor section 26 of the Decedent Estate Law were never intended to be a “ forced heir ” statute, whereby the Legislature sought to compel, regulate or control testamentary dispositions. (McLean v. McLean, 207 N. Y. 365.)
In Matter of Faber (305 N. Y. 200, 203) Judge Fulo set forth the statutory intent as follows: ‘ ‘ The legislature attempted neither to entail estates in favor of after-born children nor to shield them from intentional disinheritance or unequal treatment. Its sole objective was to assure that if, through oversight, they were neglected in the will, other provision would be made for them. ’ ’
In this proceeding the testator was fully aware of the existence of the infant at the time the will was executed. Its paternity had been judicially established, and he had supported it for a number of years. Furthermore, he had entered into a trust agreement which would provide for its future support, education and well-being until it would reach the age of 21 years. It is reasonable to conclude that the absence of a provision in decedent’s will was deliberate and not an oversight.
There appears to be a further reason why the infant here would be barred from participating in decedent’s estate. One of the conditions precedent to recovery under subdivision (a) of EPTL 5-3.2 is the requirement that the testator died ‘ ‘ leaving the after-born child unprovided for by any settlement ”. The exhibits show that not only is the infant adequately provided for by the settlement reached in Family Court, but payment thereof until the infant reaches the age of 21 years is secured by a trust agreement entered into by decedent and Liberty National Bank and Trust Company.
Because the intention of the statute is to protect against wholly inadvertent failures to provide for after-born children, the courts have been quick to find a 11 settlement ’ ’ whenever any financial benefit, even though nominal in amount, has been provided for the child. Matter of Von Finckenstein, 179 Misc. 375; Matter of *762 Faber (supra); Matter of Anderson, 205 Misc. 151; Matter of Harmetz, 204 Misc. 942; Matter of Georger, 48 Misc 2d 579; Matter of Fredenthal, 25 Misc 2d 1068.)
There is nothing in the statute that excepts a 11 settlement ’ ’ from the effect of its provisions where it is made as the result of the institution of a paternity proceeding. I am of the opinion that the trust fund in the instant matter established prior to the execution of the will and supplemented after its execution constitutes a settlement within the meaning of EPTL 5-3.2.
The infant raises a further question which needs to be examined. EPTL 4-1.2 (subd. [a], par. [2]) grants the right to an illegitimate child to inherit from its father upon the condition that “ an order of filiation declaring paternity [was made] in a proceeding instituted * # * within two years from the birth of the child.”
The infant was born April 1, 1955. The filiation proceeding was commenced September 2,1958 and the order of filiation was made November 18, 1958. The decedent’s will was not executed until February 9, 1966. Notwithstanding these facts, the infant contends that she is in the legal position of being an after-born child. She contends that she became a distributee of decedent on March 1, 1966, which was the effective date of EPTL A-1.2 (formerly Decedent Estate Law, § 83-a) and thus she is in the same legal position as if she had been born on that day. She urges that the court should regard her as an after-born child in the same manner as it has applied the law to children adopted by a testator subsequent to the execution of his will. (Bourne v. Dorney, 184 App. Div. 476, affd. 227 N. Y. 641; Matter of Guilmartin, 277 N. Y. 689; Matter of Hubert, 28 Misc 2d 160.)
There are very sound reasons for holding that a child adopted after the making of a will should be regarded as an after-born child. At the time of the adoption a new family relationship begins. Both the foster parent and the child take on the relationship of that between parent and a natural born child. The child becomes a member of the family, lives in the home of both foster parents, and both the parents and child have the responsibilities and privileges of a total family relationship. Even a new birth certificate is issued by the State of New York, in which the foster parents become the parents of the child. On the other hand, the relationship between a child born out of wedlock and the father (after there has been an order of filiation) is very limited. In the average case he is only held liable for its support and education during its minority. In most instances he never sees the child; it is not taken into his home, and he has nothing to say about its upbringing. The usual *763 relationship between father and child does not exist. The child has no responsibilities to and owes no duty to the father whatsoever.
The infant further contends that the restriction in the statute which permits illegitimate children to inherit from the father only in those cases where the court has, during the lifetime of the father, made an order of filiation declaring paternity in proceedings instituted during the pregnancy of the mother or within two years from the birth of the child, is unconstitutional. It is urged that this limitation creates an arbitrary classification as to infants, where there is no filiation order within two years from the date of birth. The test to be applied ‘ ‘ must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without such basis.” (Truax v. Corrigan, 257 U. S. 312, 337; Matter of Posner v. Rockefeller, 31 A D 2d 352.)
The limitations upon the right of an illegitimate child to inherit from its father are set forth in absolute fashion in the statute. The two-year limitation provision is not akin to the Statute of Limitations found in section 517 of the Family Court Act but rather it establishes a ‘ ‘ rule of substantive law, a statute prerequisite * * * a condition precedent” to the qualification of the infant as a distributee under EPTL 4-1.2.
The legislative intent is clear on this point: ‘ ‘ Since inheritance from the father of an illegitimate has always been intertwined with proof of paternity, it is recommended that only a limited right of inheritance from the father be permitted. The child is only permitted to inherit from the father where a court of competent jurisdiction (which under present law in most cases will be the Family Court) has made an order declaring paternity during the lifetime of the father in a proceeding commenced within two years after the birth of the child.” (Fourth Report of Temporary State Comm, on Law of Estates, 1965, p. 37; N. Y. Legis. Doc., 1965, No. 19.)
Such limitations are not arbitrary or capricious, but were adopted by the Legislature to avoid post-death litigation. (Matter of Consolazio, 54 Misc 2d 398; Matter of ABC v. XYZ, 50 Misc 2d 792; Matter of Middlebrooks v. Hatcher, 55 Misc 2d 257.)
Finally, I am of the opinion that the doctrine of estoppel has no application to this proceeding. In the first place, the paternity of the infant was established in Family Court upon stipulation of the parties, and the question of the availability of the *764 use of the Statute of Limitations as a defense in the paternity proceeding was not litigated. In the second place, the decedent can hardly be said to have engaged in a course of conduct calculated to avoid the consequences of conditions imposed in a statute Avhich was not in existence at that time, but only became a law by adoption of the Legislature many years later. In the third place, approval of the use of the doctrine of estoppel to escape the conditions imposed by the Legislature in the statute would result in the encouragement of fraud and the breeding of post-death litigation, which was what the Legislature was attempting to avoid by imposing the conditions in the statute in the first place.
For the reasons stated herein, the infant’s motion is denied. The executrix of decedent’s estate is entitled to an order vacating the 11 notice of election ’ ’ filed herein.